A. W. EYNON, Respondent, v. BESSIE THOMPSON, J. H. THOMPSON and E. T. SWANSON, Defendants. T. L. BEISEKER, Intervener and Appellant.

(184 N. W. 878.)

**Mortgages — prior recording of mortgages held not to establish precedence.**
Where a mortgage is given by one in possession of realty under an agreement with a guardian of an estate to sell and to deliver title through a judicial sale, and, where, thereafter, pursuant to the agreement, a guardian's sale is held, and a guardian's deed is issued to one who is entitled to retain title as trustee of the mortgagor for advances made prior to the execution of the mortgage, it is *held* that the prior recording of the mortgage did not establish precedence, under the recording statutes, to the title and lien of the trustee.

Opinion filed October 10, 1921.

Action to foreclose a mortgage in District Court, Wells County, *Coffey*, J. The intervener has appealed from a judgment of foreclosure.

Judgment modified.

*John A. Layne* and *Arthur L. Netcher,* for appellant.

"A mortgagee of realty is regarded a purchaser thereof; and if his

mortgage is supported by actual present consideration, and is given and taken in good faith and without fraud, he is treated as a bona fide purchaser for value, and as such is protected from adverse claims of which he had no notice, actual or constructive, including not only prior deeds or other conveyances of the premises, but also all other liens upon it or claims of interest in it." 27 Cyc. 1183.

"The doctrine of bona fide purchasers does not apply to an encumbrancer of a merely equitable title or estate." Shoufe v. Griffiths 31 Pac. 93.

A person who takes a mortgage in good faith and for a valuable consideration, the record showing a clear title in the mortgagor, will be protected against any equitable titles to the premises, or equitable claims upon the title, in favor of third persons of which he had no notice actual or constructive. 27 Cyc. 1184. 39 Cyc. 1688.

*B. F. Whippel* and *John O. Hanchett,* for respondent.

A party taking a mortgage for valuable consideration from a party in possession of real estate under an unrecorded contract of purchase is protected as a bona fide purchaser under our recording statutes. Simonson v. Wenzel 27 N. D. 638; 147 N. W. 804; Toledo etc. R. C. Co. v. Hamilton, 134 U. S. 296; 33 Law ed. 905.

Thompson would be regarded as the equitable owner, notwithstanding the provisions of the statute of frauds and all other laws requiring contracts for sale and conveyances of real property to be in writing." Mitchell v. Knudtson Land Co. 19 N. D. 736; 134 N. W. 325; Torgeson v. Hauge, 34 N. D. 646; 159 N. W. 6.

An agreement to assume and pay a mortgage by a party receiving a conveyance of real estate may be wholly in parole, and is not considered as being within the statute of frauds. 27 Cyc. 1344; 1345; Moore v. Booker, 5 N. D. 543; 62 N. W. 607; Bossingham v. Syck., 91 N. W. 1047, (Iowa).

Bronson, J. *Statement.*—This is an action to foreclose a mortgage. The intervener has appealed from a judgment in favor of the plaintiff, and demands a trial de novo. The facts disclosed by the evidence are as follows: One Norton, an incompetent under guardianship, was the owner of three vacant lots in the town of Chaseley. The guardian testified that he first had a talk with defendant Thompson, one Sheppard and one Knoble about purchasing these three lots. They wanted to build upon the lots. He

made a price of $250 for the lots. They told him the money would be deposited at the bank of the defendant Swanson. He told them that he would guarantee a deed, so they proceeded to build. Thompson built a hotel and garage upon the west 25 feet of the lots in 1916. The plaintiff; Eynon, testified that the bank, of which he was formerly president, loaned to the defendants, Mrs. Thompson and Mr. Thompson, her husband, $300 on October 3, 1916, upon a note and mortgage covering the entire three lots executed by Bessie Thompson and J. H. Thompson, her hus- band, defendants. Then they were occupying the hotel building and in possession of the property. They represented that the lots were paid, and there was nothing against the property; that it was in the hands of  an estate, and they would not get a deed until that fall or later. He further testified: That, during the following week, he talked with the defendant Swanson about this property and the mortgage. That Swanson stated that he had a plain note against Thompson, and wanted Eynon to protect it. Later, when the guardian's sale of this property was being advertised, he saw Swanson. Swanson said he intended to bid in the property. That he agreed that if Eynon would not appear at the sale, he would take up the mortgage. Further, he testified that he knew before the loan was made that Sheppard was in possession of a portion of these lots and had buildings thereon. Also Knoble was in possession with a building thereon. That he never had any intention of bidding in Knoble's and Sheppard's portions of the lots. That he became owner of the note and mortgage, and Swanson. subsequently refused to pay the same.

On February 25, 1916, the guardian made a written agreement with Swanson to deliver a warranty deed covering the lots for a consideration of $250. He further testified: He had no talk with Thompson concerning how much of the lot he should have. That the talk between him and Swanson was that Swanson should bid in the lots himself for the parties to whom he had sold them. That the buidings on the lots were completed before the sale proceedings were finished. That before the deed was issued Swanson stated he would pay the Eynon mortgage. Swanson testified that he had been cashier of the Chaseley State Bank. That prior to the execution of the written agreement with the guardian he had a talk with Sheppard. He then determined to purchase these three lots. The talk was had with Thompson after the time of the written agreement. Previously, he had agreed to deed a portion of the lots of Sheppard, and another to Knoble, and to reserve the west 25 feet for himself. Then he talked with

Thompson. He wanted him to build a hotel on the west 25 feet. Thompson did not have enough money. The agreement was made that Thompson should pay enough money to invest in the lot, and the bank would finance him, holding the lot and hotel as security. That these deals concerning the lots were made to help build up the town. That Thompson paid for his portion of the lot $75.00. Sheppard and Knoble around $80.00. That Thompson proceeded to build the hotel. The bank financed him, furnishing $975 in various items, between March 18 and July 24, 1916, evidenced by notes maturing October 1, 1916. This portion of the lot after construction of the hotel buildings was worth about $1,500 or $1,600. On October 3, 1916, Thompson renewed these notes by a new note for $975, and upon the next day left town. That he made these advances, being assured through the written agreement of the guardian. That he first learned concerning plaintiff's mortgage, through the weekly commercial report of mortgages on record. That he made the arrangements with the guardian about the sale. That he had no talk with Eynon about his not bidding upon the lots. That he did not agree to pay the mortgage. That he did tell him that they would take no action on their claim without first taking it up with him so that he would have a chance to protect himself. The bank's claim for $975 is now held by the intervener, who together with Swanson in an answer and counterclaim, asserts the validity of Swanson's legal title for purposes of the claim concerned over plaintiff's mortgage. Plaintiff's mortgage was recorded October 4, 1916. The guardian's deed is dated March 9, 1917, and was recorded May 8, 1917. It recites therein the making of an order authorizing private sale dated October 24, 1916, the holding of the sale on November 27, 1916, and the offering of the property in separate parcels and the order confirming the sale, dated January 8 (1916?). The deed covers, in addition to the lots concerned herein, an additional lot in another block. The Thompsons, defendants, were served by publication, and are in default. The trial court found that, when plaintiff's mortgage was made, Thompson was then the full equitable and beneficial owner of west 25 feet involved, subject only to the payment of $75 for such lot then on deposit with the bank for that purpose; that plaintiff's mortgage was a conveyance of the premises involved in good faith and for value within the meaning of the recording statutes, and that the equitable liens and rights of Swanson and his bank were void in respect thereto. Judgment of foreclosure was ordered accordingly. In its findings of fact

the trial court found in plaintiff's favor upon the disputed questions of fact.

*Decision.*—The respondent does not question the legality of the guardian's sale and deed. On the contrary, he relies upon its validity in order to sustain the lien of the mortgage. It is not necessary to give serious consideration, nor does the respondent, to the testimony concerning nonbidding or the assumption of the mortgage by Swanson. Eynon had no intention to bid on the three lots, and certainly not upon the extra lot mentioned in the guardian's deed. The property was sold as it was agreed that it should be sold. There is no contention made that the property, or any part of it, was sold at an improper low price, or that a greater price could have been secured therefor. 24 Cyc. 28. The evidence is insufficient to establish that Swanson agreed to take up the mortgage prior to the payment of Swanson's advances to Thompson, and the trial court does not so find. The respondent relies for protection upon the recording act. §§ 5594—5598, C. L. 1913. That his mortgage, taken bona fide for a valuable consideration without notice of any claim or lien, is, under these statutes, prior, although taken from one in possession of the realty under an unrecorded contract of purchase, citing Simonson v. Wenzel, 27 N. D. 638, 147 N. W. 804, L. R. A. 1918C, 780. He contends that Thompson was the full equitable owner of the premises when the mortgage was made, and that, accordingly, the conclusions of the trial court should be sustained.

The purpose of the recording statutes is to give notice of, and to protect, rights as against subsequent purchasers or incumbrancers, not to create rights not possessed, either of record or in fact. This purpose is apparent even though the recording act protects concerning subsequently acquired title through the doctrine of inurement. See § 5529, C. L. 1913. The recording statutes apply as notice only to subsequent purchasers and incumbrancers. Sarles v. McGee, 1 N. D. 365, 48 N. W. 231, 26 Am. St. Rep. 633. In this case, the title involved is dependent upon a judicial sale, a sale in guardianship proceedings. Both parties, in order to maintain any right at all, must rely upon the validity and regularity of this judicial sale. This sale is not questioned in this proceeding. May it be said that, prior to this judicial sale, either Thompson or Swanson had any title in the premises? May a guardian part with a right or an interest in the estate, and thus abrogate the statutory authority of the court both before and after the sale? It is plainly apparent that, prior to the judicial sale, Thompson possessed no equitable title such as existed in the vendee of a contract

for a deed in Simonson v. Wenzel, supra, upon which reliance is placed by the respondent. The giving and the recording of the mortgage did not create any greater right than Thompson then had. It neither enlarged the estate nor the lien. Upon any conclusion that may be drawn from the evidence, it appears that Swanson received the title as it was agreed that he should receive it, Thompson has no title except as it is conferred through the title to Swanson. The mortgage has no force except such as it secures through the title to Swanson. If it be contended that, under favorable construction of the evidence for the plaintiff, Swanson was only the agent of Thompson, the fact remains that he was in any event an agent coupled with an interest, and pursuant to the agreement was to receive this title first, not from Thompson, but from the estate, and afterwards was to convey the same to Thompson. Swanson was not a subsequent purchaser or incumbrancer from Thompson. No title could be received by Thompson until first it had been vested in Swanson. Upon this record, the priority of rights between the contending parties, already established in fact by the agreement of Swanson and Thompson, is not to be disturbed, or even determined, by a foot race to the recorder's office. In fact, the advances made by Swanson were prior in point of time to those made by the plaintiff. In law, the title to secure these advances was prior to the vesting of plaintiff's lien. If the plaintiff seeks equity to compel the performance of Swanson's trust, he must do equity by recognizing the priority in fact of Swanson's advances. It is unnecessary to consider the question whether the plaintiff is a bona fide purchaser. The conclusions and judgment of the trial court must be modified so as to provide for foreclosure of plaintiff's mortgage, inferior and subsequent to the priority of intervener's note. It is so ordered. The appellant will recover costs.

ROBINSON, BIRDZELL, and CHRISTIANSON, JJ., concur.

GRACE, C. J. (specially concurring). I concur in the opinion of Mr. Justice Bronson on the ground that the alleged contract for sale of the lots in question between the guardian and Thompson, Sheppard, and Knoble was wholly invalid and was of no legal force or effect.

To be of any validity it would necessarily have to be made in pursuance of the laws governing the sale of this kind of property by guardians. It was not; hence plaintiff's mortgage never attached.